UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

FILED 2013 NOV -7 P 12: 04
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

CHONG SOURIVONG
CASEY PRASATHANE

VS.

CA13- 729 M

US BANK NATIONAL ASSOCIATION AS TRUSTEE
FOR THE RMAC TRUST SERIES 2012-5, ALIAS,
BANK OF NEW YORK MELLON
AS TRUSTEE FOR PROTIUM MASTER
GRANTOR TRUST, ALIAS
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., ALIAS,
STATEBRIDGE COMPANY, LLC, ALIAS
AND JOHN DOE, ALIAS

**COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION CLAIM PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT AND DAMAGES**

The Plaintiffs, Chong Sourivong and Casey Prasathane, by their Attorney complain of Defendants, Bank of New York Mellon as Trustee for Protium Master Grantor Trust, Mortgage Electronic Registration Systems, Inc., Statebridge Company, LLC, Rushmore Loan Management, LLC and John Doe as follows:

FACTS AND PARTIES

1. Plaintiffs, Chong Sourivong and Casey Prasathane are residents of the State of Rhode Island with an address of 63 Felix Street, Providence, Rhode Island. Plaintiffs own said real estate located at 63 Felix Street, Providence, Rhode Island 02720.

1

2. Defendant, John Doe is any entity, which has an interest in the Plaintiffs' mortgage and/ or promissory note.

3. Defendant, US Bank National Association as Trustee for the RMAC Trust Series 2012-5T ("2012-5T") is an entity seeking to foreclose the Plaintiffs' Mortgage. It does not own Plaintiffs' note or mortgage.

4. Defendant, Bank of New York Mellon National Trust Company property as Trustee for Protium Master Grantor Trust ("Protium") claimed to be the entity which sold Plaintiffs' mortgage to 2012-5T on December 28, 2012. It never owned Plaintiffs' note or mortgage. On December 28, 2012 this trust did not exist.

5. Statebridge Company, LLC ("Statebridge") claimed to be the former loan servicer for 2012-5T and Protium. It is not the loan servicer for the owner of Plaintiffs' note. It is a Colorado Limited Liability Company. Defendant, Mortgage Electronic Registration Systems, Inc., ("MERS"), is a Delaware Corporation. Defendant Rushmore Loan management Service, LLC ("Rushmore") claims to be the loan servicer for Plaintiffs' loan. Homeq Servicing ("Homeq") is the former servicer for the Plaintiffs' loan.

6. Equifirst Corporation ("Equifirst") was a Mortgage Company which was the nominal originator of Plaintiffs' loan. It no longer exists and was dissolved in the State of North Carolina on June 15, 2010. Sutton Funding, LLC is a Delaware Limited Liability company, which is a wholly owned subsidiary of Barclays Bank. It never owned Plaintiffs' Note or Mortgage.

7. All of the parties named herein have sufficient minimum contacts with the State of Rhode Island to render them subject to its jurisdiction.

8. Exhibit A is a copy of the mortgage executed by Plaintiffs to MERS as nominee for Equifirst. This mortgage was dated March 5, 2007, but was not recorded until July 7, 2007 in the Land Evidence Records of the City of Providence in Book 8764 Page 26. This document did not contain a legal description of the premises and thus was a defective mortgage

9. After this late recording, it was discovered that Exhibit A did not have a legal description. Instead of contacting the Plaintiffs to re-execute a corrective mortgage, either the closing attorney or Equifirst Corporation

2

recorded a copy of the plaintiff's mortgage, with a description on August 24, 2007, which was recorded in Book 8824 Page 46.

10. Exhibit B is a copy of the copy of the document entitled corrective mortgage, which was not executed by Plaintiffs.

11. Pursuant to Rhode Island law, copies of documents cannot be recorded in the Land Evidence Records. Exhibit B was not executed by the Plaintiffs and thus was a nullity. A review of Exhibit A and Exhibit B indicate that they are identical, with the latter being a photocopy.

12. On about December 12, 2008, MERS and Sutton Funding, LLC prepared a document purporting to be an assignment of mortgage and note from MERS as nominee for Equifirst to Sutton Funding, indicating that this transfer was for valuable consideration. (Exhibit C).

13. On about September 20, 2012, Statebridge, MERS and Protium prepared a document purporting to be an assignment of mortgage and note from Sutton Funding, LLC to Protium indicating that this transfer was for valuable consideration. (Exhibit D).

14. On about December 28, 2012, Statebridge, Protium and 2012-5T prepared a document purporting to be an assignment of mortgage and note from Protium to 12-5T indicating that this transfer was for valuable consideration. (Exhibit E).

15. All of these alleged assignments referenced the alleged corrective mortgage, which was a copy and thus was a nullity, not executed by the Plaintiffs.

16. Defendant John Doe, Alias is any other entity holding any interest in the mortgage or note executed by Plaintiffs.

17. The Court has subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1332 (diversity jurisdiction) as the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and because the Defendants are foreign entities with a principal residence outside of the State of Rhode Island.

18. The subject matter of this complaint is proper to invoke the Equitable Jurisdiction of this Court.

3

19. All of the parties named herein have sufficient minimum contacts with the State of Rhode Island to render them subject to its jurisdiction.

20. This Court has subject matter jurisdiction over the matters in this complaint pursuant to the following statutes:

   a. The provisions of the Declaratory Judgment Act 28 USC Sec. 2201 et seq., grant this Court jurisdiction over questions of law and equity. The Plaintiffs are asking this Court, inter alia, to restrain the certain defendants from taking adverse action on the subject property owned by the Plaintiffs at 63 Felix Street, Providence, Rhode Island.

   b. The provisions of the Declaratory Judgment Act, 28 USC Sec. 2201 et seq., grant the Court jurisdiction to determine certain legal questions relating to the property rights of the Plaintiffs and the Defendants under certain contracts, assignments, powers of attorneys, and deed. The Plaintiffs ask that the alleged assignment be declared invalid and that the Court decide that the mortgage and note are not owned by any of the Defendants and that said Defendants lacked standing to enforce the note or to foreclose on the mortgage.

## COUNT I
## DECLARATORY JUDGMENT

21. Paragraphs 1-17 are incorporated by reference

22. On about December 8, 2008, Homeq, MERS and Sutton Funding, LLC ("Sutton") prepared a fraudulent document purporting to be an assignment of mortgage and note from MERS as nominee for Equifirst to Sutton indicating that this transfer was for valuable consideration. (Exhibit C). This fraudulent document was prepared and executed in order to create the false illusion that Sutton owned the mortgage and note. The basis for this allegation of the creation of a fraudulent document referenced to be an assignment are the following facts:

4

a. MERS never owned, possessed or held the note. The alleged assignment purports to convey the mortgage without the note, which is impossibility. By the terms of the mortgage and in the Exhibit A, MERS as nominee for Equifirst claimed to be the owner of the mortgage on December 12, 2008. MERS could not in this matter by the terms of the mortgage and by its own rules, regulations and by-laws act on its own behalf. The alleged assignment that the signatory was signing as an Assistant Secretary, in which she claimed to be acting as the nominee on behalf of Equifirst, which no longer owned the note in 2008. Thus the alleged assignment by MERS itself was not only a fraudulently created document, but was also void and a nullity. No consideration was paid by Sutton to either MERS or Equifirst. MERS, and Homeq were aware of this fact, yet allowed the fraudulent document purporting to be an assignment to be drafted and executed in order to seek to foreclose on the property owned by the Plaintiffs.

b. The person whose name was affixed to the alleged assignment was Noriko Colston, who is not and has never been an employee or validly authorized Assistant Secretary of MERS. She is and has been an employee of Homeq. She has never been legally authorized to sign any document on behalf of MERS. She is a robosigner who workedfor Homeq.

c. No corporate resolution has ever been made naming Noriko Colston as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. She was not authorized, pursuant to purported MERS regulations alleged to be in effect at the time of the execution of the alleged assignment, to be a MERS officer. A copy of the MERS regulations is attached as Exhibit F.

d. The By-Laws of Mortgage Electronic Registration Systems, Inc. have never authorized the Secretary of MERS or any person to appoint any certifying authorizing officer. A copy of the By-Laws is attached as Exhibit G. No MERS officer, Board of Directors nor any MERS official has ever appointed Noriko Colston as a MERS Assistant Secretary. She had no status with MERS.

e. Pursuant to its By-Laws, only the Board of Directors of MERS can appoint officers of MERS. It never appointed Nonko Colston as a MERS officer and it has never appointed any person as a MERS officer.

f. The original mortgage on this property was given to MERS as Nominee for Equifirst, which originally owned the note. Thus MERS, which never owned, possessed or held the note, did not have the authority or ability to assign the note with the mortgage. In fact, MERS Officers and representatives have made judicial admissions that MERS never owns the notes and has never been entitled to payment in regards to any mortgage. This finding of fact was made by the Nebraska Supreme Court in the case <u>of Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking and Finance,</u> 704 N.W. 2d 784 (Nebraska, 2005). A copy of this case is attached as Exhibit G. There has been the following judicial admission by MERS in that case, which states:

> MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes. MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur."

> <u>MERS v. Nebraska Department of Banking,</u> at p.787

g. There has been a finding as a matter of fact and law by the Nebraska Supreme Court that:

> MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of

6

the mortgage debtors owe MERS any money. Based on the foregoing, we conclude that MERS does not acquire mortgage loans, as defined in § 45-702(8), and therefore, MERS is not subject to the requirements of the Act.

<u>MERS v. Nebraska Department of Banking</u>, at p. 788

h.  MERS has made certain admissions in its Appellate Brief in <u>MERS v. Nebraska Department of Banking</u>, which is attached as Exhibit H

> 1. MERS does not take applications for, underwrite or negotiate mortgage loans;
>
> 2. MERS does not service mortgage loans;
>
> 3. MERS does not sell mortgage loans;
>
> 4. MERS is not an investor who acquires mortgage loans on the secondary market;
>
> 5. There is no rational basis for determining that MERS acquires loans;
>
> 6. MERS, in its agreement with its members, cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents;
>
> 7. MERS is named as the "nominee" owner unless and until it is authorized to do so by the real and beneficial owners of such security documents;
>
> 8. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time;

9. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans;

10. MERS only acts when directed by its members and for the sole benefit of the owners and holders of the promissory notes secured by the mortgage instruments naming MERS as nominee owner;

11. MERS has no interest at all in the promissory note evidencing the mortgage loan;

12. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note;

13. MERS does not acquire any interest (legal or beneficial) in the <u>loan instrument</u> (i.e., the promissory note or other debt instrument).

14. The note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note.

15. MERS cannot be deemed to be acquiring mortgage loans because it does not obtain legal or beneficial title in loan instruments;

16. The beneficial note interests are transferred by endorsement and delivery of the note;

17. As MERS merely holds legal title to the security instrument as nominee for the lender, it lacks authority to do anything more than notify the lender or loan servicer of the consumer's complaint.

18. Other than holding legal title to the security instrument in order to immobilize the lien in the real estate records, any other action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan servicer and for such lender or loan servicer's benefit;

19. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties;

20. Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider;

i. The alleged assignment of mortgage without the note is a nullity and MERS was unable to assign anything that it did not own.

j. The alleged assignment was designed to allow Sutton to falsely claim nominal ownership of the loan even though the note and the mortgage were never sold to Sutton by MERS or by Equifirst. These entities needed to create a purported authorized party to sign the alleged assignment. Thus this fraudulent assignment, without basis or authorization, was created. MERS, Sutton and Homeq were aware of all these facts at the time of the alleged assignment. Nevertheless a Homeq employee claimed to sign a document which purported to assign the mortgage, aware of the fact that the document was not duly executed pursuant to Rhode Island law. This document conveyed nothing as MERS did not own anything in regard to Plaintiffs' mortgage or note to convey, transfer or assign to Sutton on December 12, 2008.

k. No consideration was given to MERS in conjunction with the alleged assignment of the note and mortgage on December 12, 2008.

> 1. As a result of this void and unauthorized document purporting to be an assignment, lacked any standing, is not the real party in interest and was not a proper party to foreclose or enforce the original mortgage or note.

23. On about September 20, 2012, Statebridge, MERS and Protium prepared a document purporting to be an assignment of mortgage and note from Sutton Funding, LLC to Protium indicating that this transfer was for valuable consideration.

24. This fraudulent document was prepared and executed in order to create the false illusion that Protium owned the mortgage and note. The basis for this allegation of the creation of a fraudulent document referenced to be an assignment are the following facts:

a. Defendant, Bank of New York Mellon National Trust Company property as Trustee for Protium Master Grantor Trust ("Protium never owned Plaintiffs' mortgage or note. In fact on September 20, 2012 this trust did not exist.

b. A copy of the Trust agreement for this Trust is attached as Exhibit I. This agreement indicates that the all the loans in the Trust were sold to it by Protium Finance, LP, a Cayman Island Limited Partnership on or before September 15, 2009. Either Barclays Bank or Sutton Funding, LLC sold all the loans, which went into this Trust to Protium Finance, LP on or before September 15, 2009. Protium Finance, LP was the Depositor of all the loans in this Trust. Thus on September 20, 2012, Sutton Funding, LLC did not own our note or mortgage and could not assign either because it never owned the loan and if for any reason it did own the loan, it did had already sold the loan to Protium Finance, LP in 2009. Thus on September 20, 2012, Sutton Funding owned nothing to assign and the assignment was void.

25. On about December 28, 2012, Statebridge, Protium and 2012-5T prepared a document purporting to be an assignment of mortgage and note from Protium to 12-5T indicating that this transfer was for valuable consideration.

26. This fraudulent document was prepared and executed in order to create the false illusion that 2012-5T owned the mortgage and note. The

10

basis for this allegation of the creation of a fraudulent document referenced to be an assignment are the following facts:

a. Protium could not assign our mortgage on December 28, 2012 because it did not own it. In addition on December 28, 2012, all the loans in Protium were sold back to Barclays Bank, as indicated by Exhibit J. The alleged assignment by Statebridge Company, LLC ("Statebridge") as a power of attorney, is void because Protium did not exist at that time. No documents exist which have any action taken on behalf of Protium by Bank of New York Mellon.

## COUNT II
## BREACH OF CONTRACT

27. Paragraphs 1-26 are incorporated by reference.

28. None of the provisions of paragraph 22 of the mortgage were complied with. Before an acceleration of the loan was declared, the Lender was required to specify:

    a. the default;

    b. the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

    c. that failure to cure the default on or before the date specified in the Notice may result in the acceleration and the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

29. Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is

11

given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

30. Specifically the provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. Exhibit K is the alleged default notice mailed on July 12, 2013 to Plaintiffs. This notice did not contain any of the language required as noted above. RMAC 2012-5T claimed to be the owner of the note and mortgage, which it never was at any time. It failed to comply with paragraph 22 of the mortgage. This notice did not indicate that the lender may accelerate the loan if the default was not cured. It merly declared a default and no acceleration was ever made after this declaration.

31. Neither Statebridge, Rushmore, Protium nor 2012-5T ever accelerated the loan. Plaintiffs have never received a letter accelerating the loan.

32. Despite the failure to accelerate, the attorney for Rushmore and RMAC 2012-5T on September 13, 2013 sent a letter to Plaintiffs claiming to foreclose by sale pursuant to the Rhode Island General Laws indicating that a foreclosufer sale wa scheduled for November 7, 2013 (Exhibit L ) This notice was defective because the note had never been accelerated and because 2012-5T does not own the note or the mortgage now or at any time during the alleged foreclosure proceedings.

## COUNT III
## NEITHER DEFENDANT OWNS THE NOTE NOR HAS THE NOTE EXECUTED BY THE PLAINTIFFS TO EQUIFIRST CORPORATION BEEN ENDORSED

33. Paragraphs 1-32 are incorporated by reference.

34. Defendant 2012-5T does not own Plaintiffs' note, which was originally executed to Equifirst. A purported note was sent to Plaintiffs by the Attorney for Statebridge or 2012-5T which was not endorsed by an endorsement and thus remains payable to Equifirst. (Exhibit M ). This note has not been negotiated to any party pursuant to the Uniform Commercial Code.

35. It was sent to the Plaintiffs by Statebridge an undated document titled as "Note Endorsement."

36. Due to the lack of ownership of the note neither 2012-5T nor Rushmore are authorized to seek foreclosure of Plaintiffs' property.

## COUNT V
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692 et seq.

37. Paragraphs 1-36 are incorporated by reference.

38. Statebridge and Rushmore are debt collector as defined by 15 USC 1692 et seq. since November 6, 2012, has committed several violations of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

13

39. Statebridge and Rushmore have used unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

40. In violation of the FDCPA, representatives of Statebridge contacted the Plaintiff on numerous occasions since November 67 2012 despite knowing that these were represented by an attorney.

41. Statebridge and Rushmore has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of her property even though 2012-5T and Protium never had any present right to possession of the property claimed as collateral through an enforceable security interest. They have committed the following actions were are violations of he FDCPA

   a. On about July 12, 2013 Rushmore sent to Plaintiff, through its attorney Marinosci Law Offices, a Notice of Default despite not being authorized to send this notice.

   b. On about September 13, 2013 Rushmore sent to Plaintiff, through its attorney, Marinosci Law Offices, a Notice of Foreclosure Sale, despite not being authorized to send this notice.

   c. Rushmore has caused publication of three foreclosure advertisements of the sale of Plaintiff's home.

   d. Rushmore has contracted with an auctioneer to sell Plaintiffs' home.

   e. On December 28, 2012 Statebridge prepared a fraudulent Assignment of Mortgage.

42. The facts alleged in this complaint establish that 2012-5T and Rushmore and Statebridge and Protium never had the present right to possession of the property claimed as collateral through an enforceable security interest.

43. Statebridge and Rushmore also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Statebridge made false

representations regarding the character and legal status of the debt, namely that it was owned by 2012-5T and prior to by Protium and Rushmore.

44. Each action of Statebridge and Rushmore and described above constitutes a separate violation of the FDCPA for which Statebridge Rushmore is liable.

45. The purported foreclosure action and all actions to seek to foreclose on the property have occurred within one year of the filing of this complaint.

46. The Plaintiffs have incurred damages and is entitled to statutory damages, actual damages, and attorney fees and costs for each violation of the FDCPA.

## COUNT IV
## INJUNCTIVE RELIEF AND DAMAGES

47. Paragraphs 1-46 are incorporated by reference.

48. The Plaintiffs requires a Mandatory Injunction and Preliminary Injunction against all defendants to cease any attempts to commence or continue an illegal foreclosure action of 2012-5T and Rushmore.

49. 2012-5T had no interest in the property, the mortgage, or note, thus had no standing to foreclose upon the Plaintiffs' mortgage or to enforce the note or to assign the mortgage or transfer the note.

50. Plaintiffs' property is assessed by the City of Providence Tax Assessor at the amount of $118,000.00. The original balance of the mortgage was $263,500.00.

51. The Plaintiffs are being irreparably harmed by the illegal collection actions of all the Defendants. Plaintiffs' were substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed. The failure of the Defendants to comply with paragraph 22 of the mortgage and to commence the alleged foreclosure proceedings, without having the contractual ability to do so, demonstrates that the Plaintiffs have a

substantial likelihood of success. The void nature of the alleged assignments demonstrates that the Plaintiffs have a substantial likelihood of success. That fact that the document referenced as a corrective mortgage was merely an unexecuted copy renders that the document is void. This results in the Plaintiffs having a substantial likelihood of success. Likewise the recording of a foreclosure deed following a defective foreclosure of the Plaintiffs property by a party not entitled to foreclose on the property will cause the Plaintiffs irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendants. Such relief sought by Plaintiffs will not disserve the public interest if imposed.

**WHEREFORE**, the Plaintiffs prays that this Court:

A. Issue a Declaratory Judgment determining that the note and mortgage was never vested in Bank of New York Mellon as trustee for Protium Master Grantor Trust or RMAC Trust series 2012-5T or US Bank National Association as Trustee for the RMAC Trust Series 2012-5.

B. Issue a Declaratory Judgment that all assignmentswere void.

C. Issue a Declaratory Judgment that Bank of New York Mellon as Trustee for Protium Master Grantor Trust or RMAC Trust series 2012-5T or US Bank National Association as Trustee for the RMAC Trust Series 2012-5never owned or held the promissory note or mortgage executed by the Plaintiffs.

D. Issue a Declaratory Judgment that any foreclosure proceedings previously conducted against the Plaintiffs have been invalid and void and that any costs and legal fees allegedly incurred by Defendants shall not be charged against the Plaintiffs.

E. Issue a Declaratory Judgment that the alleged Default letter did not comply with terms of the mortgage and

renders the entire alleged foreclosure proceeding defective.

F. Issue a Declaratory Judgment that the failure to send an acceleration letter did not comply with terms of the mortgage and rendered the entire alleged foreclosure proceeding defective.

G. Issue a Declaratory Judgment that that the unexecuted Corrective Mortgage is void.

H. Preliminarily and permanently restrain and enjoin all of the Defendants from commencing any further foreclosure actions, eviction actions or collection action against the Plaintiffs.

I. Issue a Preliminary and Permanent Injunction against all of the Defendants from commencing any further or collection action against the Plaintiffs.

J. Issue a Temporary Restraining Order restraining and enjoining 2012-5T, Rushmore or its Attorneys or agents from conducting a foreclosure sale on November 7, 2013 at 2:00 PM on the Plaintiffs' property located at 63 Felix Street, Providence, Rhode Island.

K. That the Plaintiffs be awarded Compensatory and punitive damages, attorney fees and costs against all defendants jointly and severally for wrongful foreclosure for breach of contract for creating fraudulent documents and for violation of the FDCPA.

L. Award such other relief as this Court deems just and proper.

CHONG SOURIVONG
CASEY PRASATHANE
By their Attorney

November 7, 2013

_____
JOHN B. ENNIS
1200 Reservoir Avenue
Cranston, RI 02920
401-943-9230
Jbelaw@aol.com